_(Official Form 27)(12/13)

# United States Bankruptcy Court
# Southern District of Mississippi

Re:   Joey Dawn Smith                                    Case Number : 15-50502 KMS
                                                         Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1.      Creditors Name:        <u>Trustmark National Bank</u>

2.      Amount of the debt subject to this reaffirmation agreement:
        <u>$2859.30</u> principal balance on date of bankruptcy.   $2859.30 principal balance to be repaid under Reaffirmation agreement.

3.      Annual percentage rate of interest:   <u>4.00</u> % at the time of bankruptcy was filed. **Variable rate which is Periodic Rate and Corresponding annual percentage rate (see page 2 of the Trustmark Interest Only Equity Line Agreement which is attached)**

4.      Repayment terms (if fixed rate):   $ per month.  **Your regular monthly payment will equal the amount of your accrued finance charges.  Loan matures May 9, 2017.**

5.      Collateral, if any, securing the debt:  Current market value $85,000.00 (per schedules)
        Description:   **Land Deed of Trust**

6.      Does the creditor assert that the debt is nondischargeable?  No
(If yes, attach a declaration setting forth the nature of the debt and basis for contention that the debt is nondischargeable.)

| **Debtor's Schedule I and J Entries** | | **Debtor's Income and Expenses as Stated on Reaffirmation Agreement** | |
|---|---|---|---|
| 7A.   Total monthly income from Schedule I, line 12 | $ 3432.28 | 7B.   Monthly income from all sources after payroll deductions | $ 3432.28 |
| 8A.   Total monthly expense from Schedule J, line 22 | $ 3404.71 | 8B.   Monthly expenses | $ 3404.71 |
| 9A.   Total monthly payments on reaffirmed debts not listed on Schedule J | $ 0.00 | 9B.   Total monthly payments on reaffirmed debts not included in monthly expenses | $ 0.00 |
|  |  | 10B.   Net monthly income (Subtract sum of line 8B and 9B from Line 7B. If total is less than zero, put the number in brackets.) | $ 27.57 |

B27 (Official Form) (12/09)

11. Explain with specificity any difference between the income amounts (7A and 7B):

_____

_____

12. Explain with specificity any difference between the expense amounts (8A and 8B):

_____

_____

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that
Any explanation contained on those lines is true and correct.

_____          _____
Signature of Debtor (only required if          Signature of Joint Debtor (if applicable, and only
Line 11 or 12 is completed)          required if line 11 or 12 is completed)

Other Information

Check this box if total on line 10B is less than zero. If that number is less than zero, a presumption of
Undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the
Sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:_____

_____

_____

Was Debtor represented by counsel during the course of negotiating this reaffirmation agreement?
_____ X Yes          _____ No

If Debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel
executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
_____ X Yes          _____ No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the
parties identified on this Reaffirmation Agreement Cover Sheet.

Lee R. "Bud" Lindsay, Jr.
Trustmark National Bank

B240A/B ALT (Form 240 A/B ALT) (Reaffirmation Agreement) (12/11)

| | |
|---|---|
| [] | **Presumption of Undue Hardship** |
| [x] | **No Presumption of Undue Hardship** |

(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:   Joey Dawn Smith                                Case Number: 15-50502 KMS
                                                                    CHAPTER 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box]*

[X] Part A: Disclosure, Instructions, and     *[ File Part E only if debtor was not*
      Notice to Debtor (Pages 1-5)        *represented by an attorney during the*
[X] Part B: Reaffirmation Agreement      *course of negotiating this agreement.]*
[X] Part C: Certification by Debtor's
      Attorney                          Part E: Motion for Court Approval
[X] Part D: Debtor's Statement in Support     Proposed Order Approving Reaffirmation
      of Reaffirmation Agreement         (Form 240C ALT)

*[**Note:** Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. **Note also:** If you complete Part E, you must prepare and file Form 240C ALT- Order on Reaffirmation Agreement.]*

**Name of Creditor:** <u>Trustmark National Bank</u>
[ ] *[Check this box if Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act.]*

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

1.      **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
     This summary is made pursuant to the requirements of the Bankruptcy Code.

**<u>AMOUNT REAFFIRMED</u>**
     The amount of debt you have agreed to reaffirm:         **<u>$2859.30</u>**(principal balance)

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement which is attached. This could include additional attorney fees if this agreement is not executed and filed with the appropriate bankruptcy court.*

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                                     2

## **ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

     a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (I) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

     (i)       The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part b below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:

----And/Or----

     (ii)      The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:_____%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____@_____%,
$_____@_____%,
$_____@_____%.

     b.  If the debt is an extension of credit other than under an open end credit plan, the creditor may disclose the annual percentage rate shown in (i) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

     (i)      The Annual Percentage Rate under § 128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure:  _____%

----And/Or----

     (ii)     The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:_____%. If different simple interest rates apply to different balances included in the amount reaffirmed,

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                    3

the amount of each balance and the rate applicable to it are:

$_____ @_____%;
$_____ @_____%;
$_____ @_____%.

c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

> **The interest rate on your loan my be a variable rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.   4.00%**

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or type of item | Original Purchase Price or Original amount of Loan |
|---|---|
| Land Deed of Trust | $85,000.00 |

*Optional---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule**

Your first payment in the amount of $_____ is due on|_____ , but future payment amounts may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

--Or---

Your payment schedule will be: (number) payments in amount of $
Each, payable  (monthly, annually, weekly, etc.) on the (day) of each
(week, month, etc.) unless altered later by mutual agreement in writing.

---Or---

A reasonably specific description of the debtor's repayment obligation to the extent known by
The creditor or creditor's representative:  Your regular monthly payment will equal the amount of your accrued financed charges until maturity on May 9, 2017

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                                    4

## 2.    INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1.  Read the disclosure in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on.)

2.  Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3.  If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4.  If you are not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5.  The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6.  If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7.  If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in the Bankruptcy Court where the Judge will review your reaffirmation agreement. The Bankruptcy Court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, or lien on your real property, like your home.

Form 240A/B ALT – Reaffirmation Agreement (Cont.)                    5

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the Bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) you reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

### Frequently Asked Questions

What are your obligation if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or wages. Otherwise, your obligation will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

NOTE: When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have any questions about your reaffirming a debt or what the law requires, Consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your Reaffirming a debt when the hearing on the reaffirmation agreement is held.

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                                    6

**PART B: REAFFIRMATION AGREEMENT**

    I (we) agree to reaffirm the debts arising under the credit agreement described below.

1.  Brief description of credit agreement:

            Trustmark Interest Only Equity Line Agreement

2.  Description of any changes to the credit agreement made as part of this reaffirmation agreement:

**SIGNATURES**

Borrower:                                             Accepted by Creditor:


Joey Dawn Smith                                      _____
(Print Name)                                         Trustmark National Bank
                                                     (Print Name of Creditor)
                                                     P. O. Box 291
                                                     Jackson, Ms. 39205-0291
(Signature)                                          (Address of Creditor)
Date:  4-14-15
                                                     _____
                                                     (Signature)

Co-borrower, if also reaffirming these debts         Lee R. "Bud" Lindsay, Jr.
                                                     (Printed name of individual
                                                         Signing on behalf of creditor)


_____
(Print Name)


_____
(Signature)                                          Date of creditor acceptance:

Date:                                                April 2, 2015

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                                    7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*[To be filed only if the attorney represented the debtor in negotiating the reaffirmation agreement.]*

[X] I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[ ] *Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

[ ] Not representing debtor(s) with respect to this agreement.

Printed Name of Debtor's Attorney:   J. Thomas Ash

Signature of Debtor's Attorney:

Date:   4/24/15

Form 240A/B ALT – Reaffirmation Agreement  (Cont.)                                    8

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete numbered paragraphs 1 and 2, **OR** if the creditor is a Credit Union and the debtor is represented by an attorney, read the unnumbered Paragraph below. Sign the appropriate signature line(s) and date your signature. If you complete paragraph 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating " No Presumption of Undue Hardship."]*

1.   I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income ( take home pay plus any other income received) is $ *3432.28* , and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ *2656.00* , leaving $ *776.28* to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____ .

_____
**(Use an additional page if needed for a full explanation.)**

2.   I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____*Joey Smith*_____
           (Debtor)

_____
(Joint Debtor, if any)

Date:   *4-14-15*

*If the creditor is a Credit Union and the debtor is represented by an attorney]*
I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
           (Debtor)

_____
(Joint Debtor, if any

Date: _____

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Joey Dawn Smith** |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF MISSISSIPPI |
| Case number<br>(If known) | |

Check if this is:
☐ An amended filing
☐ A supplement showing post-petition chapter 13 income as of the following date:

MM / DD/ YYYY

## Official Form B 6I
## Schedule I: Your Income
12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

| | | **Debtor 1** | **Debtor 2 or non-filing spouse** |
|---|---|---|---|
| 1. | **Fill in your employment information.**<br><br>If you have more than one job, attach a separate page with information about additional employers.<br><br>Include part-time, seasonal, or self-employed work.<br><br>Occupation may include student or homemaker, if it applies. | **Employment status**<br><br>■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| | | **Occupation**    Showroom Sales | Security |
| | | **Employer's name**    Luter's Supply Co., Inc. | Securitas |
| | | **Employer's address**<br><br>104 S. Adams St<br>Tylertown, MS 39667 | 9938 Airline Hwy<br>Ste 100<br>Baton Rouge, LA 70816 |
| | | **How long employed there?**    17 Years | |

### Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $    1,955.47 | $    1,241.75 |
| 3. | Estimate and list monthly overtime pay. | 3. | +$    0.00 | +$    0.00 |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $    1,955.47 | $    1,241.75 |

Debtor 1    **Joey Dawn Smith**                                                      Case number (*if known*)

|  |  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| | Copy line 4 here | 4. | $ | 1,955.47 | $ 1,241.75 |
| **5.** | **List all payroll deductions:** | | | | |
| | 5a. Tax, Medicare, and Social Security deductions | 5a. | $ | 351.69 | $ 250.05 |
| | 5b. Mandatory contributions for retirement plans | 5b. | $ | 0.00 | $ 0.00 |
| | 5c. Voluntary contributions for retirement plans | 5c. | $ | 0.00 | $ 0.00 |
| | 5d. Required repayments of retirement fund loans | 5d. | $ | 0.00 | $ 0.00 |
| | 5e. Insurance | 5e. | $ | 0.00 | $ 0.00 |
| | 5f. Domestic support obligations | 5f. | $ | 0.00 | $ 0.00 |
| | 5g. Union dues | 5g. | $ | 0.00 | $ 0.00 |
| | 5h. Other deductions. Specify: | 5h.+ | $ | 0.00 + | $ 0.00 |
| **6.** | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ | 351.69 | $ 250.05 |
| **7.** | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ | 1,603.78 | $ 991.70 |
| **8.** | **List all other income regularly received:** | | | | |
| | 8a. Net income from rental property and from operating a business, profession, or farm<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ | 0.00 | $ 0.00 |
| | 8b. Interest and dividends | 8b. | $ | 0.00 | $ 0.00 |
| | 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ | 0.00 | $ 0.00 |
| | 8d. Unemployment compensation | 8d. | $ | 0.00 | $ 0.00 |
| | 8e. Social Security | 8e. | $ | 0.00 | $ 836.80 |
| | 8f. Other government assistance that you regularly receive<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: | 8f. | $ | 0.00 | $ 0.00 |
| | 8g. Pension or retirement income | 8g. | $ | 0.00 | $ 0.00 |
| | 8h. Other monthly income. Specify: | 8h.+ | $ | 0.00 + | $ 0.00 |
| **9.** | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ | 0.00 | $ 836.80 |
| **10.** | **Calculate monthly income.** Add line 7 + line 9.<br>Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 1,603.78 + $ 1,828.50 | = $ 3,432.28 | |

**11.** State all other regular contributions to the expenses that you list in Schedule J.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____     11.   +$ _____0.00

**12.** Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies     12.   $ _____3,432.28

**Combined monthly income**

**13.** Do you expect an increase or decrease within the year after you file this form?
☒  No.
☐  Yes. Explain: _____

**Fill in this information to identify your case:**

Debtor 1 __Joey Dawn Smith__

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: __SOUTHERN DISTRICT OF MISSISSIPPI__

Case number _____
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing post-petition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

☐ A separate filing for Debtor 2 because Debtor 2 maintains a separate household

## Official Form B 6J
# Schedule J: Your Expenses                                              12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Your Household

1. **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**   ■ No

   Do not list Debtor 1 and   ☐ Yes.   Fill out this information for
   Debtor 2.                             each dependent..............
   Do not state the
   dependents' names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |
| _____ | _____ | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

### Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 6I.)

| | Your expenses |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.   4. $ __748.71__

   If not included in line 4:

   4a.  Real estate taxes                                                    4a. $ __0.00__
   4b.  Property, homeowner's, or renter's insurance                         4b. $ __75.00__
   4c.  Home maintenance, repair, and upkeep expenses                        4c. $ __100.00__
   4d.  Homeowner's association or condominium dues                          4d. $ __0.00__
5. **Additional mortgage payments for your residence,** such as home equity loans   5. $ __0.00__

Debtor 1  **Joey Dawn Smith** _____  Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ | 220.00 |
| | 6b. Water, sewer, garbage collection | 6b. | $ | 47.00 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 132.00 |
| | 6d. Other. Specify: **Home Alarm** | 6d. | $ | 40.00 |
| | **Satellite TV** | | $ | 115.00 |
| | **Garbage Fees** | | $ | 12.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 588.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 100.00 |
| 10. | **Personal care products and services** | 10. | $ | 100.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 300.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 350.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 100.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 50.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | 0.00 |
| | 15b. Health insurance | 15b. | $ | 0.00 |
| | 15c. Vehicle insurance | 15c. | $ | 142.00 |
| | 15d. Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: **Car Tags** | 16. | $ | 15.00 |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| | 17c. Other. Specify: | 17c. | $ | 0.00 |
| | 17d. Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 6I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | | |
| | 20a. Mortgages on other property | 20a. | $ | 0.00 |
| | 20b. Real estate taxes | 20b. | $ | 0.00 |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | 0.00 |
| 21. | **Other. Specify: Misc Household Expenses** | 21. | +$ | 100.00 |
| | **Tax Return Prep. Fee** | | +$ | 20.00 |
| | **Spouse's Debt Payments** | | +$ | 50.00 |
| 22. | **Your monthly expenses.** Add lines 4 through 21. The result is your monthly expenses. | 22. | $ | 3,404.71 |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $ | 3,432.28 |
| | 23b. Copy your monthly expenses from line 22 above. | 23b. | -$ | 3,404.71 |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $ | 27.57 |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.
Explain: _____

9010

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $20,000.00 | 05-09-2007 | 05-09-2017 | | | | 419 | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Joey D. Smith
73 Highway 48 W
Tylertown, MS 39667

**Lender:**  Trustmark National Bank
Tylertown Main Office
P O Box 391
Tylertown, MS 39667

---

**CREDIT LIMIT: $20,000.00**                                      **DATE OF AGREEMENT: May 9, 2007**

**Introduction.** This Trustmark Interest Only Equity Line Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through Trustmark National Bank. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Trustmark National Bank. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay Trustmark National Bank, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until May 9, 2017 ("Maturity Date"). All indebtedness under this Agreement, if not already paid according to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the State of Mississippi, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: Ten (10) Years. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will equal the amount of your accrued FINANCE CHARGES. You will make 119 of these payments. You will then be required to pay the entire balance owing in a single balloon payment. If you make only the minimum payments, you may not repay any of the principal balance by the end of this payment stream. Your payments will be due monthly. Your "Minimum Payment" will be the Regular Payment, plus any amount due and all other charges. An increase in the ANNUAL PERCENTAGE RATE may increase the amount of your Regular Payment.

In any event, if your Credit Line balance falls below $100.00, you agree to pay your balance in full. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.** Your Credit Line Account is payable in full upon maturity in a single balloon payment. You must pay the entire outstanding principal, interest and any other charges then due. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to Finance Charges; then to any amounts that exceed your Credit Limit; then to late charges and other charges; and then to unpaid principal.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 8:00 AM Central Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to five (5) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Twenty Thousand & 00/100 Dollars ($20,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

    *Credit Line Checks.* Writing a preprinted "Equity Check" that we will supply to you.

    *Requests in Person.* Requesting a credit advance in person at any of our authorized locations.

    *Credit Card Access.* Using your "MasterCard card" to receive cash advances or to make purchases.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Equity Checks in the following circumstances:

    **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Equity Check.

    **Post-dated Checks.** Your Equity Check is post-dated. If a post-dated Equity Check is paid and as a result any other check is returned or not paid, we are not responsible.

    **Stolen Checks.** Your Equity Checks have been reported lost or stolen.

    **Unauthorized Signatures.** Your Equity Check is not signed by an "Authorized Signer" as defined below.

    **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Equity Check.

    **Transaction Violation.** Your Equity Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Equity Check.

If we pay any Equity Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Equity Check. The Equity Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return

# TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT

**Loan No:** ████████                    (Continued)                    **Page 2**

Equity Checks along with your periodic billing statements; however, your use of each Equity Check will be reflected on your periodic statement as a credit advance. We do not "certify" Equity Checks drawn on your Credit Line.

**Limitations on the Use of Credit Cards.** We reserve the right not to honor MasterCard cards in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the MasterCard card charge.

**Stolen Credit Cards.** Your MasterCard cards have been reported lost or stolen.

**Unauthorized Signatures.** Your MasterCard card is not used by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Credit Line charge.

If we pay any advance requested by use of the MasterCard card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the MasterCard card will be reflected on your periodic statement as a credit advance.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Equity Check and In Person Requirements.** The following transaction limitations will apply to your Credit Line and the writing of Equity Checks and requesting an advance in person.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $250.00. This means any Equity Check must be written for at least the minimum advance amount.

**Other Transaction Requirements.** Your Equity Line Checks can be used like any other personal check, except they cannot be used to repay any amounts due under the terms of the Equity Line Agreement and Disclosure Statement. You agree to make an initial advance of at least $5,000.00 (in new money) on the Effective Disbursement Date of the Equity Line Agreement and Disclosure. "New money" is Credit Advanced for purposes other than paying existing credit obligations to us.

**Credit Card Limitations.** The following transaction limitations will apply to your Credit Line and using a Credit Card.

**Other Transaction Requirements.** There is no minimum advance amount when accessing your Credit Line with your MasterCard card.

**Authorized Signers.** The words "Authorized Signer" on Equity Checks and MasterCard cards as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Equity Checks and MasterCard cards.** If you lose your Equity Checks or MasterCard cards or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (800) 243-2524. You also can notify us at Trustmark National Bank, P. O. Box 114, Jackson, MS 39205-0114.

**Liability For Unauthorized MasterCard Credit Card Transactions.** Your liability for unauthorized use of your credit card with the MasterCard logo when it is used as a MasterCard credit card to access your Credit Line will not exceed: (A) Zero dollars ($0.00) if the conditions set forth below have been met, or (B) If those conditions have not been met, the lesser of fifty dollars ($50.00) or the amount of money, property, labor, or services obtained by the unauthorized use before notification to us. Zero liability will apply only if you can demonstrate that you have exercised reasonable care in safe-guarding your card from risk of loss or theft; and (1) you have not reported two or more incidents of unauthorized use to us within the preceding twelve (12) months; and (2) your account is in good standing.

These consumer liability limits apply only to United States issued MasterCard branded consumer cards. If the transaction does not meet the conditions set forth above, these limits with respect to unauthorized transactions may be exceeded to the extent allowed under applicable law. "Unauthorized Use" means the use of your credit card by a person, other than you, who does not have actual, implied, or apparent authority for such use, and for which you receive no benefit. To notify us of lost or stolen cards, or of unauthorized transactions, call us at (800) 243-2524 or write to us at Trustmark National Bank, P. O. Box 114, Jackson, MS 39205-0114.. This will help prevent unauthorized access to your account and minimize any inconvenience.

**MasterCard is a registered trademark of MasterCard International Incorporated.**

**Liability For Unauthorized Use.** You may be liable for the unauthorized use of your MasterCard card access device which accesses your Credit Line. You will not be liable for unauthorized use that occurs after you notify us or our designee at Trustmark National Bank,P. O. Box 114, Jackson, MS 39205-0114., orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for unauthorized use of your MasterCard card will not exceed $50.00.

If you use an access card which debits a checking account (or other consumer asset account) but also draws on an overdraft line of credit, Regulation E provisions apply, as well as sections 226.13(d) and (g) of Regulation Z. In such a transaction, you might be liable for up to $50.00 under Regulation Z. Also, you might be liable for $50.00, $500.00, or an unlimited amount under Regulation E, or a lesser amount under applicable state law. Please refer to your electronic fund transfers disclosure for liability limitations and error-resolution procedures for transactions covered by the federal Electronic Fund Transfers Act.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated May 9, 2007, to a trustee in favor of us on real property located in Walthall County, State of Mississippi.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A daily FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the "Periodic Rate" to the balance described herein. Then we multiply by the number of days in the billing cycle. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay **FINANCE CHARGES**, not calculated by applying a Periodic Rate, as set forth below:

**Minimum FINANCE CHARGE.** In any event, including payment of the Credit Line balance in full, you may have to pay a Minimum FINANCE CHARGE of $0.50. This fee will be charged as follows: Monthly.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. Initially, we will apply the discounted rates shown herein. Thereafter, we start with an independent index which is the "Wall Street Journal" Published Prime Rate (the "Index"). We will use the most recent index value available to us as of the first day of each billing cycle for any ANNUAL PERCENTAGE RATE adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, then divide the value by the number of days in a year (daily). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by the number of days in a year (daily). This

## TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT

Loan No: ▆▆▆▆▆▆      (Continued)      Page 3

result is the **ANNUAL PERCENTAGE RATE**. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect the first day of each billing cycle for your account following an index change. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be more than the lesser of 21.000% or the maximum rate allowed by applicable law. Today the Index is 8.250% per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Credit Line are as stated below:

### Rates During the Discount Period

| Term of Discount<br>Range of Balances | Discounted Rate | ANNUAL PERCENTAGE<br>RATE | Daily Periodic<br>Rate |
|---|---|---|---|
| **First 3 payments** | | | |
| All Balances | 4.990% | 4.990% | 0.01367% |

The term of the discount period is 3 payments.

Three (3) payments represents three (3) billing cycles. You must make an initial advance of $5,000.00 (in new money) to qualify for the discounted rate for three (3) billing cycles.

### Current Non-discounted Rates for the First Payment Stream

| Range of Balance<br>or Conditions | Margin Added<br>to Index | ANNUAL PERCENTAGE<br>RATE | Daily Periodic<br>Rate |
|---|---|---|---|
| All Balances | 0.750% | 9.000% | 0.02466% |

**Notwithstanding** any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Returned Items.** You may be charged $30.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Overlimit Charge.** Your Credit Line Account may be charged $35.00 if you cause your Credit Line Account to go over your Credit Limit. This includes writing a Equity Check in excess of your available balance.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account $5.00 for the time it takes us to locate, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Late Charge.** Your payment will be late if it is not received by us within 15 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you $35.00.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Custom Loan Fee. The amount of this other charge is: $100.00.

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between this Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Credit Line Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Equity Checks and any other access devices. Any use of Equity Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Equity Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Equity Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive the Minimum FINANCE CHARGES as stated above and to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce

## TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT
(Continued)

Loan No: ▮▮▮▮▮▮▮▮

the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Trustmark National Bank, P. O. Box 114 Jackson, MS 38205-0114.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Trustmark National Bank Attn: Credit Operations P. O. Box 291 Jackson, MS 39205.

**Jury Waiver.** We and you hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either us or you against the other.

**Financial Statements.** The Borrower and/or Grantor agree to provide financial information as lender may require from time to time.

**Additional Suspension Language.** If we temporarily prohibit extensions of credit and/or reduce your credit limit because any of the conditions listed in the Suspension or Reduction section exist, we will mail or deliver a written notice of such action, including the reason for it, to each person who is affected, within 3 business days after the time such action is taken. If your ability to obtain extensions of credit has been halted or your credit limit reduced, at the banks option, you will be required to make minimum monthly payments of both principal and finance charge of at least 2% of the outstanding balance of your account. You will have to make a written request to us for reinstatement of your credit privileges or credit limit to its prior level before we will consider such reinstatement. If you make such a request, we will investigate and determine whether the condition which caused the suspension or reduction has changed. We will advise you that our prior action remains in effect. If the condition which caused the suspension or reduction has changed but another condition warranting continued temporary suspension of credit and/or reduction of credit limit or Account termination is discovered we will may react to such new information in a manner consistent with this Agreement.

**USING YOUR CREDIT CARD.** You may use your Card or Checks to purchase or lease goods or services from participating establishments. You may also use your Card to obtain Cash Advances from your Account at an ATM, or by presenting it to us, or to any institution that accepts the Card for that purpose.

You will owe us for these amounts, plus any applicable FINANCE CHARGES and other applicable charges or fees, payable in U.S. Dollars.

**Ownership and Use of Your Card.** As the Account owner(s), you are liable for all credit obtained under your Account. If you authorize another person to use your Card or Check, you are liable for any credit obtained on your Account for as long as that person holds the Card or Check. In addition, you will remain liable until you recover possession of the Card or Check. Misuse of your Card by an authorized person will not be considered unauthorized use. See "Lost Cards and Unauthorized Use" above. All Cards and Checks issued by us to you remain our property. We reserve the right to cancel, suspend, recall or reissue any Card or Check at any time without prior notice. Upon demand, you must return any Card we supply to you or destroy the Card by cutting it in half immediately. Checks must be mailed or returned to us upon request. Cards may not be reissued if you move out of our service area.

**Internet Gambling Transactions.** Internet gambling transactions submitted for authorization will be declined. These transactions include, but are not limited to, lottery tickets, casino gambling chips, off-track betting and wagers at racetracks. This includes transactions on any Card or Account issued through us.

**Refunds.** If a seller agrees to give a refund, you will accept a credit on your Account instead of a cash refund.

**Transactions.** You will retain for statement verification your copy of each purchase slip, Cash Advance or other transaction to your Account.

**Foreign Currency Conversion.** You may make a Purchase or obtain a Cash Advance in a currency other than U.S. dollars. If you do, the card association will convert the transactions into U.S. dollars. The conversion rate between the transaction currency and the billing currency will be either (i) a rate selected by the card association from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate the card association itself receives, or (ii) the government-mandated rate in effect for the applicable central processing date. The conversion rate the card association uses may differ from any published rate in effect on the day you made the transaction or it was posted to your Account. You agree to pay us the amount converted into U.S. dollars according to card association procedures.

**Honoring Your Card.** We are not liable for the failure or refusal of a merchant, ATM or other institution to honor your Card. Although you may have credit available, we will not be liable for the failure to authorize credit due to operational difficulties or mistakes. Transactions made above a certain dollar amount may require authorization by us before the transaction can be approved. In addition, we may limit the number and amount of transactions approved in one day for security reasons.

**Telephone Monitoring.** From time to time, we may monitor telephone calls regarding your Account with us to assure the quality of our service. You acknowledge and agree to any such monitoring or recording of telephone calls.

**Credit Reports and Information.** You are advised that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of this Agreement.

**CUSTOM LOANS.** You may receive your initial advance under your Credit Line as a Custom Loan. You may also convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan. You may also receive any new advance under your Credit Line as a Custom Loan. All Custom Loans will be repaid in monthly installments over a term agreed to by you and us at the time you request a Custom Loan. All Custom Loans must amortize in equal monthly installment of principal and interest over a term not to exceed the maturity date of your Credit Line.

**Custom Loan Draw Period.** You can request an advance under your Credit Line or Custom Loan or exercise the option to convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan only during the Draw Period described in the "Term" section of this Agreement.

**Custom Loan Fee.** You will be required to pay a Custom Loan fee in the amount of $100 for each Custom Loan made under this Agreement. If you elect to receive an advance under you Credit Line as a Custom Loan or convert all or part of your Credit Line to a Custom Loan. This fee is a prepaid finance charge.

**Custom Loan Rate Determination.** The interest rate applicable to the Custom Loan shall be established by us based on rates prevalent at the time you receive an advance under your Credit Line as a Custom Loan or exercise your option to convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan. Following your request to receive an advance under your Credit Line as a Custom Loan or convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan, we will provide you with all disclosures required by law regarding the accrual and payment of interest on the Custom Loan. After your receipt of these disclosures, you will have the opportunity to withdraw your request to receive an advance under your Credit Line as a Custom Loan or convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan.

**General Provisions for Custom Loans.** A Custom Loan represents all or part of one or more credit advances under this Agreement that must be

## TRUSTMARK INTEREST ONLY EQUITY LINE AGREEMENT AND DISCLOSURE STATEMENT
**Loan No:** ▮▮▮▮▮▮                              (Continued)                              **Page 5**

repaid over a fixed term with scheduled monthly payments. The minimum amount you may request for each Custom Loan is $5,000.00. You may request to receive an advance under your Credit Line as a Custom Loan or convert all or a portion of the outstanding principal balance of your Credit Line to a Custom Loan by contacting any Trustmark branch. The term of each Custom Loan will be the period you select at the time of that Custom Loan, with a maximum term not to exceed the maturity date for your Credit Line. You are limited to a maximum of five (5) Custom Loans outstanding at any time. You agree to follow all procedures we specify and to sign any documents, including, but not limited to a Custom Loan Promissory Note, we require to establish a Custom Loan ("Custom Loan Documents"). If two or more Borrowers have signed this Agreement, any one or more of you may establish a Custom Loan as part of your Credit Line.

**Custom Loan Statements.** We will provide you on your monthly statement a separate itemized accounting for each Custom Loan in addition to information regarding your Revolving Balance. All statements will include the applicable information described in the "Periodic Statements" provision contained in this Agreement. Your statement will reflect as separate items the Revolving Balance on your Line of Credit and each Custom Loan with a total aggregate monthly payment due on your Credit Line (the total payment due for your Revolving Balance and each Custom Loan).

**Custom Loan Payments.** We will calculate a separate monthly payment amount for each Custom Loan, which will be set forth in the Custom Loan Documents. Each Custom Loan will be payable in accordance with the provisions of the Custom Loan Documents. You may prepay all or part of the outstanding balance on a Custom Loan any time without penalty.

**Single Extension of Credit.** All Custom Loans represent advances under your Credit Line. Your Credit Line, whether evidenced by your Revolving Balance or one or more Custom Loans, is a single extension of credit under this Agreement. You agree and acknowledge that your Revolving Balance and all Custom Loans under your Credit Line are components of a single agreement by us to extend credit to you under this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of Mississippi.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

**BORROWER:**

X *Joey D. Smith*
Joey D. Smith

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X *[signature]*
Witness

**ACCEPTED: TRUSTMARK NATIONAL BANK**

By: *[signature]*
Authorized Signer

**Effective Disbursement Date:** 5/14/07

BOOK 0325 PAGE 027

**RECORDATION REQUESTED BY:**
Trustmark National Bank
Tylertown Main Office
P O Box 391
Tylertown, MS  39667

**WHEN RECORDED MAIL TO:**
Trustmark National Bank
Attn: Loan Operations
P. O. Box 1182
Jackson, MS 39205

**SEND TAX NOTICES TO:**
Joey D. Smith
73 Highway 48 W
Tylertown, MS  39667

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

ACCOUNT #

NOTE #

FILE #

This Deed of Trust prepared by:
Mickie F. Jackson, Assistant Vice President
Trustmark National Bank
P O Box 391
Tylertown, MS 39667
(601) 876-0514

NOTE TO CHANCERY CLERK:  Tract I & Tract II, in the SW 1/4 of SE 1/4, Section 23, T2N, R10E, Walthall County, Mississippi.


8040

## DEED OF TRUST

**THIS DEED OF TRUST** is dated May 9, 2007, among Joey D. Smith ("Grantor"); Trustmark National Bank, whose address is Tylertown Main Office, P O Box 391, Tylertown, MS  39667 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and T. Harris Collier, III, whose address is P O Box 291, Jackson, MS  39205 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.  For valuable consideration,** Grantor conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the **"Real Property"**) located in Walthall County, State of Mississippi:

See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as  73 Highway 48 W, Tylertown, MS  39667.**

**CROSS-COLLATERALIZATION.**  In addition to the Credit Agreement, this Deed of Trust secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Credit Agreement, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.  If the Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of Grantor to Lender, then this Deed of Trust shall not secure additional loans or obligations unless and until such notice is given.

**REVOLVING LINE OF CREDIT.**  This Deed of Trust secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement.  Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement.  It is the intention of Grantor and Lender that this Deed of Trust secures the balance outstanding under the Credit Agreement from time to time up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.**  Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any

Loan No: BOOK 0325 PAGE 028

**DEED OF TRUST**
**(Continued)**

Page 2

kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Mississippi law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender, together with such other hazard and liability insurance as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of your credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.



**DEED OF TRUST**
**(Continued)**

BOOK**0325**PAGE**029**

Page 3

Loan No:

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such Indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such Indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of

Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Grantor will be in default under this Deed of Trust if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Deed of Trust, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable.

**Sale of Property.** Grantor waives the provisions of Section 89-1-55, Mississippi Code of 1972, as amended, and any successor provisions, as far as said Section restricts the right of Trustee to offer at sale more than one hundred and sixty acres at a time, and Trustee may offer the Property as a whole or in part and in such order as the Trustee may deem best, regardless of the manner in which it may be described.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall, at the request of Lender, sell the Real Property after giving notice of the time, place and terms of sale as required by Section 89-1-55 of the Mississippi Code of 1972, as amended, and any successor provisions, and execute a deed to the purchaser of the Real Property. Out of the proceeds arising from the sale, the costs and expenses of executing this Deed of Trust, including a reasonable Trustee's fee and the attorneys' fees prescribed in the Credit Agreement or in this Deed of Trust, shall first be paid; next the amount of the Indebtedness then remaining unpaid shall be paid; and, lastly, any balance remaining shall be paid to Grantor or to Grantor's representatives agents or assigns.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Credit Agreement or by law.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender will have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Walthall County, State of Mississippi. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor Trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Loan No:

**DEED OF TRUST**
**(Continued)**

BOOK 0325 PAGE 031

Page 5

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any person may change his or her address for notices under this Deed of Trust by giving written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** What is written in this Deed of Trust and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Deed of Trust. To be effective, any change or amendment to this Deed of Trust must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Mississippi.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Deed of Trust unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Deed of Trust. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Deed of Trust is not valid or should not be enforced, that fact by itself will not mean that the rest of this Deed of Trust will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Deed of Trust even if a provision of this Deed of Trust may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury.** All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Mississippi as to all Indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust:

**Beneficiary.** The word "Beneficiary" means Trustmark National Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means Joey D. Smith and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated May 9, 2007, with **credit limit of $20,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is May 9, 2017. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Grantor.** The word "Grantor" means Joey D. Smith.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Deed of Trust.

**Lender.** The word "Lender" means Trustmark National Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

Loan No: **BOOK 0325 PAGE 032**

**DEED OF TRUST**
**(Continued)**

Page 6

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means T. Harris Collier, III, whose address is P O Box 291, Jackson, MS  39205 and any substitute or successor trustees.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST. AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

X _Joey D. Smith_
Joey D. Smith

---

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF _Mississippi_ )
) SS
COUNTY OF _Walthall_ )

Personally appeared before me, the undersigned authority in and for the said County and State, on this _9th_ day of _____ _May_ , 20 _09_ , within my jurisdiction, the within named Joey D. Smith, who acknowledged that he or she signed, executed and delivered the above and foregoing Deed of Trust for the purposes mentioned on the day and year therein mentioned.

_Nichie D. Jackson_
NOTARY PUBLIC

My Commission Expires:
_06-23-2010_

[Notary Seal: NICHIE F. JACKSON NOTARY PUBLIC MISSISSIPPI EXPIRES JUNE 23, ... WALTHALL COUNTY, MS]

LASER PRO Lending, Ver. 5.39.00.009  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - MS  E:\CFI\LPL\G03.FC  TR-47295  PR-20

EXHIBIT "A"

BOOK 0325 PAGE 033

TRACT I:
FROM AN IRON PIN LYING 278 FEET WEST OF THE SOUTHEAST CORNER OF THE
SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 23, TOWNSHIP 2
NORTH, RANGE 10 EAST, WALTHALL COUNTY, MISSISSIPPI; RUN THENCE NORTH, 295.8
FEET TO A POINT ON THE NORTH BOUNDARY OF MISSISSIPPI HIGHWAY NO. 48; THENCE
RUN NORTH 65 DEGREES 13 MINUTES WEST, 179.6 FEET TO A CONCRETE RIGHT-OF-WAY
MARKER; THENCE RUN NORTH 61 DEGREES 16 MINUTES WEST 170 FEET TO THE POINT OF
BEGINNING. THENCE RUN NORTH 61 DEGREES 16 MINUTES WEST 330 FEET; THENCE,
LEAVING THE HIGHWAY RIGHT-OF-WAY, RUN NORTH 28 DEGREES 44 MINUTES EAST
119.95 FEET; THENCE RUN SOUTH 66 DEGREES 25 MINUTES 55 SECONDS EAST ALONG THE
SOUTH BOUNDARY OF THE OLD (NOW ABANDONED) FERNWOOD, COLUMBIA AND GULF
RAILROAD FOR 331.20 FEET; THENCE RUN SOUTH 28 DEGREES 44 MINUTES WEST 149.5
FEET TO THE POINT OF BEGINNING, CONTAINING 1 ACRE, MORE OR LESS, LYING IN THE
SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 23, TOWNSHIP 2
NORTH, RANGE 10 EAST, WALTHALL COUNTY, MISSISSIPPI.

TRACT II:
FROM AN IRON PIN LYING 278 FEET WEST OF THE SOUTHEAST CORNER OF THE
SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 23, TOWNSHIP 2
NORTH, RANGE 10 EAST, AND RUN NORTH FOR 295.8 FEET TO THE NORTH BOUNDARY OF
MISSISSIPPI HIGHWAY NO. 48 FOR THE POINT OF BEGINNING;
THENCE RUN ALONG SAID HIGHWAY BOUNDARY AS FOLLOWS: NORTHWESTWARDLY
ALONG A CURVE TO THE RIGHT WHOSE CHORD BEARS NORTH 65 DEGREES 13 MINUTES
WEST 179.6 FEET TO A CONCRETE RIGHT-OF-WAY MARKER; NORTH 61 DEGREES 16
MINUTES WEST 719.4 FEET; NORTHWESTERLY ALONG A CURVE TO THE LEFT WHOSE
CHORD BEARS NORTH 66 DEGREES 30 MINUTES 47 SECONDS WEST 270.01 FEET; THENCE,
LEAVING THE HIGHWAY RIGHT-OF-WAY, RUN NORTH 109.2 FEET; THENCE RUN SOUTH 66
DEGREES 25 MINUTES 55 SECONDS EAST ALONG THE SOUTH RIGHT-OF-WAY OF THE OLD
(NOW ABANDONED) FERNWOOD, COLUMBIA AND GULF RAILROAD FOR 1,136.3 FEET;
THENCE RUN SOUTH 180.60 FEET TO THE POINT OF BEGINNING, CONTAINING 3.38 ACRES,
MORE OR LESS, LYING IN THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF
SECTION 23, TOWNSHIP 2 NORTH, RANGE 10 EAST, WALTHALL COUNTY, MISSISSIPPI.

LESS AND EXCEPT:
FROM AN IRON PIN LYING 278 FEET WEST OF THE SOUTHEAST CORNER OF THE
SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 23, TOWNSHIP 2
NORTH, RANGE 10 EAST, WALTHALL COUNTY, MISSISSIPPI; RUN THENCE NORTH, 295.8
FEET TO A POINT ON THE NORTH BOUNDARY OF MISSISSIPPI HIGHWAY NO. 48; THENCE
RUN NORTH 65 DEGREES 13 MINUTES WEST, 179.6 FEET TO A CONCRETE RIGHT-OF-WAY
MARKER; THENCE RUN NORTH 61 DEGREES 16 MINUTES WEST 170 FEET TO THE POINT OF
BEGINNING; THENCE RUN NORTH 61 DEGREES 16 MINUTES WEST 330 FEET; THENCE,
LEAVING THE HIGHWAY RIGHT-OF-WAY, RUN NORTH 28 DEGREES 44 MINUTES EAST
119.95 FEET; THENCE RUN SOUTH 66 DEGREES 25 MINUTES 55 SECONDS EAST ALONG THE
SOUTH BOUNDARY OF THE OLD (NOW ABANDONED) FERNWOOD, COLUMBIA AND GULF
RAILROAD FOR 331.20 FEET; THENCE RUN SOUTH 28 DEGREES 44 MINUTES WEST 149.5
FEET TO THE POINT OF BEGINNING, CONTAINING 1 ACRE, MORE OR LESS, LYING IN THE
SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 23, TOWNSHIP 2
NORTH, RANGE 10 EAST, WALTHALL COUNTY, MISSISSIPPI.

SIGNED FOR IDENTIFICATION PURPOSES THIS 9TH DAY OF MAY, 2007

Joey D. Smith

JOEY D. SMITH

STATE OF MISSISSIPPI
COUNTY OF WALTHALL
RECORDED IN LAND DEED OF TRUST
BOOK _325_ AT PAGE _27_
THIS THE _23rd_ DAY OF _May_ 20_07_
BOB A. BRACEY, Chancery Clerk @ 1:30pm
BY _Janine Johnson_ D.C.